UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:21-CV-00105-FDW

| | |
|---|---|
| TYRONE CHANDLER, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>COMMISSIONER OF SOCIAL )<br>SECURITY, Social Security Administrator, )<br>)<br>Defendant. )<br>)<br>) | ORDER |

THIS MATTER is before the Court on Claimant Tyrone Chandler's Motion for Judgment on the Pleadings and Memorandum in Support (Doc. Nos. 11, 12), filed November 19, 2021, and Defendant Acting Commissioner of Social Security Andrew Saul's ("Commissioner") Motion for Summary Judgment and Memorandum in Support (Doc. Nos. 13, 14), filed December 12, 2021. Claimant, through counsel, seeks judicial review of an unfavorable administrative decision on his application for Supplemental Security Income. Plaintiff also has a pending consent Motion for Extension of Time, (Doc. No. 15), which the Court GRANTS and deems the briefs timely filed. The Court DENIES Defendant's Motion to file a Surreply, (Doc. No. 17).

Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth below, Claimant's Motion for Summary Judgment is DENIED; the Commissioner's Motion for Summary Judgment is GRANTED; and the Commissioner's decision is AFFIRMED.

1

## I. Background

On December 15, 2016, Claimant filed a Title II application for Supplemental Security Income ("SSI"), alleging disability beginning May 1, 2015. (Doc. No. 7-3, p. 84). After his application was denied initially and upon reconsideration (Id.), Claimant requested a hearing by an Administrative Law Judge ("ALJ"). (Id.). The ALJ held a hearing on November 20, 2018, after which the ALJ issued an unfavorable decision on April 3, 2019, finding Claimant not disabled under the Social Security Act. (Id. At 96).

During the five-step sequential evaluation process for determining whether an individual is disabled under the Social Security Act, the ALJ found at step one that Claimant had not engaged in substantial gainful activity since May 1, 2015. At step two, the ALJ found Claimant to have the following severe impairments: "lumbar degenerative disc disease status post laminectomy; bilateral ankle degenerative joint disease; residuals status post left shoulder arthroscopy; asthma; obesity and a post-traumatic stress disorder." (Id. at 86). At step three, the ALJ determined Claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Id.). Then, the ALJ found Claimant had the Residual Functional Capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a):

> [E]xcept: he is limited to never climbing ladders, ropes, or scaffolds; performing all other postural activities occasionally; occasional overhead reaching with the non-dominant left upper extremity; no concentrated exposure to extreme of temperature or respiratory irritants such as gases, fumes or chemicals and no concentrated exposure to hazard such as heights or moving machinery. In addition, the claimant is able to maintain concentration up to 2 hours at a time but is limited to performing simple, routine tasks with occasional decision-making, occasional changes to the work duties and with no face-to-face contact with general public to perform work duties.

(Id. at 88).

For step four, in response to a hypothetical factoring in Claimant's age, education, work experience, and RFC, the vocational expert ("VE") testified Claimant could not perform past relevant work. (Id. at 96). For step five, the ALJ then asked the VE whether jobs exist in the national economy for an individual with Claimant's age, education, work experience, and RFC. (Id). The VE testified given those factors, the individual would be able to perform the requirements of representative "unskilled," "sedentary" occupations such as "order clerk (DOT 209.567-014)," "charge account clerk (DOT 205.367-014)," and "document preparer (DOT 249.587-018)." (Id. at 96). Thus, the ALJ concluded Claimant was not disabled as defined by the Social Security Act from May 1, 2015, through the ALJ's decision. (Id.).

Claimant's subsequent request for review by the Appeals Council was denied, and as a result the ALJ's decision became the final decision of the Commissioner. Claimant has exhausted all administrative remedies and now appeals to this Court pursuant to 42 U.S.C. § 405(g). Claimant argues the following: (1) the Commissioner denied Chandler a constitutionally valid hearing; (2) the ALJ failed to properly give the VA rating substantial weight; (3) the ALJ's step two carpal tunnel evaluation is not supported by substantial evidence.

## II. Standard Of Review

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The district court does not review a final decision of the Commissioner *de novo*. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v.

Richardson, 483 F.2d 773, 775 (4th Cir. 1972). The court must uphold the decision of the Commissioner, even in instances where the reviewing court would have come to a different conclusion, so long as the Commissioner's decision is supported by substantial evidence. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

The Fourth Circuit has defined "substantial evidence" as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Richardson, 402 U.S. at 401); see also Seacrist v. Weinberger, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence.")

"In order to establish entitlement to benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to past relevant work and adjustment to other work." Flesher v. Berryhill, 697 F. App'x 212, (4th Cir. 2017) (per curiam) (citing 20 C.F.R. §§ 404.1508, 404.1520(g)). In evaluating a disability claim, the Commissioner uses a five-step process. 20 C.F.R. § 404.1520(a)(4). Pursuant to this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy. 20 C.F.R. § 404.1520(a); see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing Mascio, 780 F.3d at 634); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.3d 176, 179–80 (4th Cir. 2016).

4

"If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's residual functional capacity ("RFC") before proceeding to step four, which is 'the most [the claimant] can still do despite [her physical and mental] limitations [that affect h[er] ability to work].'" Lewis, 858 F.3d at 861–62 (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)). In Lewis, the Fourth Circuit explained the considerations applied before moving to step four:

> [The RFC] determination requires the ALJ to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." Mascio, 780 F.3d at 636 (internal quotations omitted); see also SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). Once the function-by-function analysis is complete, an ALJ may define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1. See generally 20 C.F.R. §§ 404.1567, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).
>
> When assessing the claimant's RFC, the ALJ must examine "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," 20 C.F.R. §§ 404.1525(a)(2), 416.925(a)(2), "including those not labeled severe at step two." Mascio, 780 F.3d at 635. In addition, he must "consider all [the claimant's] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," 20 C.F.R. §§ 404.1529(a), 416.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [her] symptoms limit [her] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

Lewis, 858 F.3d at 862.

Proceeding to step four, the burden remains with the claimant to show he or she is unable to perform past work. Mascio, 780 F.3d at 635. If the claimant meets their burden as to past work, the ALJ proceeds to step five.

> "At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional

capacity, age, education, and work experience." [Mascio, 780 F.3d at 635 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429)]. "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations."

Monroe, 826 F.3d 176, 180 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429). If the Commissioner meets this burden in step five, the claimant is deemed not disabled and the benefits application is denied. Id.

### III. ANALYSIS

A.   Constitutionality of Commissioner's Decision

As a preliminary matter, the Court concludes the Commissioner's decision was not constitutionally defective. The Supreme Court has rejected the proposition that unconstitutional tenure protection for the head of an agency, without more, voids any agency action. See Collins v. Yellen, 141 S. Ct. 1761, 1787 (2021). Specifically, the Supreme Court explained, "the unlawfulness of [a] removal provision does not strip [a federal official] of the power to undertake the other responsibilities of his office." Id. at 1788 n.23. After Collins, "courts across the country have uniformly concluded that the allegedly unconstitutional nature of § 902(a)(3) does not require remand" absent some causal nexus to the ALJ's decision not to find a particular claimant disabled. Katrina R. v. Comm'r of Soc. Sec., 2:21-CV-4276, 2022 WL 190055, at *5 (S.D. Ohio Jan. 21, 2022) (collecting cases); see also Juliana Jolean A. v. Kijakazi, 5:20-CV-1268, 2022 WL 595361, at *4 (N.D.N.Y. Feb. 28, 2022) (collecting cases). Claimant's apparent argument—that an unconstitutional delegation of authority from the Commissioner to the ALJ demonstrates harm— lacks merit under Collins. See Harris v. Kijakazi, No. 21-1853, 2022 WL 2987928, at *3 (4th Cir. July 28, 2022) (rejecting constitutional claim where the claimant failed to demonstrate actual harm).

Here, Claimant argues that the SSA's structure is unconstitutional resulting in the denial of a constitutionally valid adjudication. Claimant, however, offers no evidence to show his case would have been decided differently but for the removal restriction. Claimant theorizes a general harm rather than one "particularized to Claimant," Kaufmann, 32 F.4th at 850, and courts have found such generalized harms to be insufficient under Collins. Willis v. Kijakazi, No. 4:21-CV-60-M, 2022 WL 4242523, at *15 (E.D.N.C. Aug. 19, 2022) (collecting cases), report and recommendation adopted sub nom. Willis v. Kijakazi, No. 4:21-CV-00060-M, 2022 WL 4238060 (E.D.N.C. Sept. 14, 2022). Accordingly, Claimant has failed to show a causal nexus between the removal restriction and the denial of his application for disability benefits. Therefore, Claimant's constitutional arguments fail.

B.    The RFC and Veteran's Association

Claimant argues the ALJ erred by giving little weight to Claimant's Veterans Administration ("**VA**") disability rating. The ALJ explicitly recognized that the VA assigned Claimant with "a permanent and total 100 percent disability rating for a combination of residual lumbosacral strain with residuals, right lower extremity radiculopathy, residual limited range of motion of the left shoulder, residuals status post right ankle fracture and surgery and post-traumatic stress disorder." (Doc. No. 7-3, p. 93). The ALJ also explicitly recognized she must give substantial weight to that disability rating unless the record clearly demonstrates such a deviation is appropriate. Id.

In explaining why the ALJ concluded a deviation to be appropriate, she noted that in June 2015, August 2016, October 2017, and July 2018, VA doctors concluded Claimant did not meet the incapacitated patient criteria based on his physical or mental condition. She further discussed orthopedic and pain clinic progress notes, which revealed Claimant did better when taking

7

Case 3:21-cv-00105-FDW    Document 20    Filed 09/20/22    Page 7 of 13

medications, including Roxicodone and Methadone. See Gross v. Heckler, 755 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling."); see also Purdham v. Celebrezze, 349 F.2d 828, 830 (4th Circ. 1965). The ALJ also concluded that the VA accommodated wheelchair was not medically necessary based on other evidence demonstrating that Claimant needed no assistive device and was independent with ambulation.

In addition, VA notes in June 2017 reveal normal examination of the upper extremities (Tr. 1614-1615). Finally, VA disability ratings varied widely and indicated significant improvement over time, even on occasions where the VA had previously assigned a 100 percent disability rating. For example, in a July 13, 2017, disability rating, the VA granted only a 10 percent disability for left lower extremity radiculopathy effective May 22, 2017, and reduced from a 40 percent disability for right lower extremity radiculopathy to 10 percent effective June 15, 2017.

Moreover, the ALJ found the lack of treatment after Claimant's back surgery and treatment for his post-traumatic stress disorder are inconsistent with the disability rating of the VA. In examining the evidence regarding post-traumatic stress disorder, the ALJ pointed out that Claimant had not required inpatient treatment or regular, ongoing outpatient psychotherapy for this condition and that his symptoms had responded well to medication. Substantial evidence supports this conclusion. Although a VA psychiatrist concluded in March 2017 that Claimant met the criteria for post-traumatic stress disorder, Claimant denied symptoms of anxiety, post-traumatic stress disorder or depression in April 2017 and in October 2017. Utilizing a "benefit of the doubt" VA doctrine, (Tr. 1500), in a VA rating appeals decision dated November 8, 2017, the appellate body noted that a rating for service-connected PTSD may be granted even though "the Veteran's service treatment records are silent as to complaints, treatment, or diagnoses relating to a psychiatric

8

disorder and/or PTSD." (Tr. 1498). Therefore, even though "specific stressors have not been verified in this case," under VA revised evidentiary standards, the Board *assumed* the credibility of Claimant's testimony about witnessing loss of life attacks in Bosnia and Kosovo. (Tr. 1499). The Appeal Board made this assumption even though Claimant had "not engag[ed]in direct combat" and was "not in receipt of any combat-related awards or decorations." (Tr. 1498). Based upon a medical opinion, the Board simply concluded Claimant's allegation about suffering from PTSD due to military service "is at least as likely as not (50 percent or greater probability)" of having happened. (Tr. 1499). The "benefit of the doubt" doctrine is not applicable in Social Security disability proceedings. Nevertheless, the ALJ noted that as a result of Claimant's PTSD, he should be able to maintain concentration up to 2 hours at a time with limitations to performing simple, routine tasks with occasional decision-making, occasional changes to the work duties, and with no face-to-face contact with the general public to perform work duties.

Finally, other substantial evidence supports the ALJ's decision and explanation for assigning little weight to the VA's disability rating. The ALJ noted that Claimant continued to engage in activities associated with the production of plays as a hobby, which included a significant amount of typing by Claimant. Furthermore, the ALJ noted that in 2108, Claimant was helping his daughter move from one home to another, and in October 2017, Claimant did not require help or have difficulty dressing, attending to personal needs, preparing meals, performing housework, shopping, or managing medications and finances.

In DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983), the Fourth Circuit held that an ALJ must consider as evidence the disability determination of another governmental agency. An ALJ's decision that ignores such a determination fails to provide the requisite findings to allow judicial review. In Bird v. Commissioner, 699 F.3d 337, 343 (4th Cir. 2012), the Fourth Circuit

9

held that the Social Security Administration must give substantial weight to a VA disability determination. The Fourth Circuit later clarified that the ALJ may afford less than substantial weight to another governmental agency's disability determination, but only if he provides "persuasive, specific, and valid reasons" for doing so. Woods v. Berryhill, 888 F.3d 686, 692 (4th Cir. 2018) (quoting McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002)). For the reasons stated above, the ALJ explained "persuasive, specific, and valid" reasons for affording less than substantial weight to the VA, and substantial evidence supports that determination.

C.      Substantial evidence of carpal tunnel

Claimant also argues the ALJ erred by discrediting Claimant's symptoms pursuant to an incorrect legal standard and improperly increased his burden of proof. The Fourth Circuit has "reiterate[d] long-standing [Circuit] law . . . that disability claimants are entitled to rely exclusively on subjective evidence to prove the severity, persistence, and limiting effects of their symptoms," Arakas v. Commissioner, 983 F.3d 83, 98 (4th Cir. 2020). Long-standing precedent containing the substance of that holding clarify that, "Although a claimants allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers . . . ." Craig v. Chater, 76 F.3d 585, 595 (4th Cir. 1996). In other words, under the appropriate circumstances, an ALJ may choose to rely exclusively on a claimant's subjective symptom reports to find disabling symptoms; however, Arakas does not compel ALJs to consider only subjective evidence, as such a requirement would conflict with the regulations, which plainly require ALJs to consider a variety of factors, including objective medical evidence, in evaluating the intensity,

10

persistence, and limiting effects of symptoms. See 20 C.F.R. § 404.1529(c) (directing ALJs to assess a claimant's medical history, medical signs and laboratory findings, daily activities, testimony about nature and location of pain, medication and other treatment used to alleviate pain, along with medical opinions from examining and non-examining sources); see also 42 U.S.C. § 423(d)(5)(A) ("Objective medical evidence of pain . . . established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether [an] individual is under a disability." (Emphasis added)).

Here, in compliance with controlling law, the ALJ considered the objective medical evidence as one part of her evaluation of the intensity, persistence, and limiting effects of Claimant's alleged symptoms. As detailed in the ALJ's decision, the ALJ also considered the opinion evidence of record and Claimant's daily activities. Overall, the ALJ's assessed residual functional capacity was consistent with Claimant's medical history and takes into account her symptoms and likely sources of exacerbation. The ALJ's assessment shows that she did not require objective evidence to support Claimant's allegations (or otherwise use it to undermine Claimant's complaints), but that it was properly assessed as part of her consideration of all evidence of record. The ALJ concluded:

> The claimant . . . also has alleged carpal tunnel syndrome; however, [e]xamination showed normal sensation in both hands with only mild delayed response at digits 1-2. The claimant has reported good response when compliant with paraffin wax, gloves, home exercises and wrist splint. Exhibits 22F/10-17, 30; 25F/62-64. In fact, the VA denied granting service-connected disability for carpal tunnel syndrome because the medical evidence of record failed to show such disability was diagnosed. Exhibit 17F/12.

(Doc. No. 7-3, p. 87). Substantial evidence supports this conclusion.

Claimant argues the ALJ failed to consider other objective medical evidence from the VA in November 2017 establishing carpal tunnel syndrome as a diagnosis. Claimant also argues that

the ALJ's failure to account for Claimant's functional limitations caused by his carpal tunnel is not harmless in light of the VE's testimony that if Claimant was limited to "frequent but not constant bilateral manipulation," then jobs would remain, but if the limitation was "occasional," then there would be no jobs at light or sedentary.

Here, substantial evidence supports the ALJ's conclusion that Claimant's carpel tunnel syndrome was nonsevere. For example, in 2017, VA records indicated the medical evidence of record failed to show *any* clinical diagnosis for carpal tunnel syndrome, and—without a current diagnosis of that disability—the VA denied Claimant's disability claim for service-connected carpal tunnel syndrome. (Doc. No. 7-9, p. 309). Claimant has failed to show how other VA records compel a different conclusion than that reached by the ALJ. The ALJ properly considered all the evidence, and substantial evidence supports the ALJ's finding that Claimant's carpal tunnel syndrome was nonsevere.

## IV. CONCLUSION

Claimant has failed to show a constitutional defect in the ALJ's adjudication of his claim. To the extent Claimant's arguments identify inconsistencies in the evidence, the ALJ's decision logically explains how she resolved those inconsistencies, and the decision is consistent with applicable law and supported by substantial evidence in the record. Claimant has failed to provide a basis for reversal or remand of the ALJ's decision.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Extension of Time, (Doc. No. 15), is GRANTED, and Defendant's Motion to file a Surreply, (Doc. No. 17), is DENIED.

IT IS FURTHER ORDERED for the reasons above, Claimant's Motion for Summary Judgment, (Doc. No. 11), is DENIED; the Commissioner's Motion for Summary Judgment, (Doc. No. 13), is GRANTED; and the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Signed: September 20, 2022

Frank D. Whitney
United States District Judge